**In re Michael G. BROWN, Relator.**

**No. 14–08–00548–CV.**

Court of Appeals of Texas,
Houston (14th Dist.).

Jan. 16, 2009.

---

**2.** Based on our ruling, Cano's motion for temporary relief is denied.

Steven P. Lindamood, Richard M. Grimes, Houston, Julia Kurtz Dean, Sugar Land, for appellant.

Richard L. Flowers, Jr., Houston, for appellee.

Panel consists of Justices FROST, SEYMORE, and GUZMAN.

## PLURALITY OPINION

KEM THOMPSON FROST, Justice.

In this original proceeding, an ex-husband seeks a writ of mandamus ordering the respondent, the Honorable Bonnie Crane Hellums, to set aside orders granting his ex-wife's motions for his court-ordered psychiatric evaluation. The mandamus petition is denied.

### FACTUAL AND PROCEDURAL BACKGROUND

Relator Michael G. Brown ("Michael") and real party in interest Darlina Barone ("Darlina") were divorced in November 2001. At that time the trial court rendered a final decree of divorce and judgment, appointing Darlina sole managing conservator of the parties' two minor children ("Children"). The decree and judgment contained the following findings:

- Michael committed family violence within the meaning of section 153.004 of the Texas Family Code.

- Michael acted intentionally or recklessly with extreme and outrageous conduct to cause his wife Darlina emo-

tional distress and Darlina suffered severe emotional distress.

- Michael intentionally, knowingly or recklessly caused Darlina serious bodily injury or Michael used or exhibited a deadly weapon while assaulting Darlina.
- Michael acted with specific intent to cause Darlina substantial injury, or Michael acted with actual, subjective awareness of the extreme degree of risk involved, considering the probability and magnitude of the potential harm to Darlina, but nevertheless Michael proceeded with conscious indifference to the rights, safety, or welfare of Darlina.

In the decree and judgment, the trial court awarded Darlina judgment against Michael for more than $5,200,000, including $2,000,000 in punitive damages, based on Darlina's claims for intentional infliction of emotional distress and assault. In the decree, all of Michael's access to the Children was required to be continuously supervised by a third-party supervisor. Subsequently, the court having continuing, exclusive jurisdiction rendered two orders, on March 17, 2005 and October 18, 2006, modifying the parent-child relationship. Under the March 2005 order, all of Michael's access to the Children between the hours of 6:00 p.m. and 6:00 a.m. was required to be continuously supervised by a third-party supervisor. The October 18, 2006 modification order was the result of a mediated settlement agreement. Under that order, none of Michael's periods of possession with the Children are supervised.

### Motion to Modify and for Temporary Orders Based on Allegations of Violent and Erratic Behavior

On April 25, 2008, Darlina filed a motion to modify the parent-child relationship and an application for emergency temporary orders. Darlina alleges in her motion that Michael has become increasingly erratic and violent, and is probably abusing alcohol and driving while intoxicated with the Children in the car. Darlina asserts that, because Michael's periods of possession are no longer supervised, Michael engages in violent conduct in the presence of the Children, who are afraid to visit their father's home. In her motion, Darlina asserts that it is in the best interest of Children to modify the terms and conditions for Michael's access to and possession of them in various ways. Darlina asserts this modification is necessary to protect the Children.

Darlina attached to her motion an affidavit of Michael's current wife Rachel. In this affidavit, which was signed on November 7, 2006, Rachel testifies as follows:

- Michael and Rachel have two children.
- On September 23, 2006, Michael moved out of the marital residence and abandoned Rachel and her children while Rachel was in the hospital giving birth to their son.
- On or about October 27, 2006, Rachel moved out of the marital residence because of threats by Michael toward Rachel and their children.
- In March 2004, while Rachel was seven-months pregnant, Michael physically assaulted her while children were in the house.
- Throughout the relationship between Michael and Rachel, there has been a history of family violence.
- Between March 2004 and September 21, 2006, on several occasions Michael physically assaulted Rachel and degraded her in front of the children.
- In 2003, Rachel filed for divorce; however, Michael and Rachel later reconciled. Nonetheless, the relationship continued to be fraught with violence through October 27, 2006.

- On September 12, 2006, while Rachel was nine-months pregnant with their child, Michael physically assaulted Rachel, who was traumatized and worried that she would go into labor. Eleven days later, on the day Rachel gave birth to the couple's son, Michael abandoned Rachel and the children and was not present when his son was born.
- Rachel believes that Michael is a danger to Rachel and their children, and she fears for the safety of their children.

Rachel submitted this affidavit to the trial court in support of an application for protective order in a 2006 divorce proceeding that she filed. She later nonsuited the divorce proceeding after she and Michael reconciled.

### Counterpetition for Modification

On May 8, 2008, Michael filed, in addition to an original answer to Darlina's suit, a counterpetition to modify the parent-child relationship, motion for mental examination of Darlina and the Children, motion to compel mediation, motion to dismiss Darlina's application for emergency temporary orders, and motion for appointment of an amicus attorney. Michael sought to be appointed the sole managing conservator of the Children with the exclusive right to establish the Children's legal domicile.

### Trial Court's Orders for Drug Testing and Psychiatric Evaluation

Shortly thereafter, on May 21, 2008, the trial court held a hearing on temporary orders. The trial court ordered Michael to submit to drug testing. The results of the drug tests showed that Michael tested positive for cocaine and Xanax. Also, at the

May 21, 2008 hearing, the trial court sua sponte ordered that Michael submit to a psychiatric evaluation by court-appointed psychiatrist, Craig Bushong, M.D. The trial court did not sign a written order at that time.

The following month, on June 24, 2008, Darlina filed a motion to enter an order for the psychiatric evaluation of Michael. Also, on June 24, 2008, Michael filed a motion to nonsuit all his claims for affirmative relief against Darlina, which the trial court granted. That same day, the trial court held a hearing, appointed an amicus attorney for the Children, and signed an order (the "June Order") in which the court appointed Dr. Bushong to interview, examine, evaluate, and consult with Michael for the purpose of performing a psychiatric evaluation of Michael. Darlina filed a second motion to enter order for psychiatric evaluation. On July 1, 2008, the trial court signed a second order (the "July Order") in which the court directed Michael to appear for the initial appointment with Dr. Bushong on July 11, 2008, at 12.30 p.m. at a specific address.[1]

Michael now seeks mandamus relief from the June Order and the July Order compelling him to submit to a psychiatric examination.

### STANDARD OF REVIEW

To show himself entitled to mandamus relief, Michael must demonstrate, among other things, that the trial court clearly abused its discretion. *See In re Prudential Ins. Co. of America,* 148 S.W.3d 124, 135 (Tex.2004). On mandamus review of factual issues, a trial court will be held to have abused its discretion only if the party requesting mandamus

---

1. The June Order did not state the date and time of Michael's initial appointment with Dr. Bushong.

relief establishes that the trial court reasonably could have reached but one decision (and not the decision it made). *See Walker v. Packer*, 827 S.W.2d 833, 840 (Tex.1992) (orig.proceeding). Mandamus review of issues of law is less deferential. A trial court abuses its discretion if it clearly fails to analyze the law correctly or apply the law to the facts. *In re Cerberus Capital Mgmt., L.P.*, 164 S.W.3d 379, 382 (Tex.2005).

## ANALYSIS

Michael contends that the trial court abused its discretion by ordering him to participate in a psychiatric examination because Darlina did not show (1) good cause, or (2) that his mental condition is in controversy. *See* TEX.R. CIV. P. 204.1.[2] Darlina asserts that these requirements of Texas Rule of Civil Procedure 204.1 do not apply to the trial court's orders because they are governed by Texas Rule of Civil Procedure 204.4.[3] For the purpose of this analysis, it is presumed, without deciding, that the requirements of Rule 204.1 apply in the instant case.[4]

## Did Michael stipulate that Darlina is entitled to all the relief she seeks?

■ Michael's main argument is that no good cause has been shown and that his mental condition is not in controversy because Michael has nonsuited all of his claims and has stipulated to all relief Darlina seeks. Though Michael has nonsuited all his claims,[5] for Michael's argument to succeed, Michael must have stipulated to all relief Darlina seeks. For this purported stipulation, Michael relies on the following oral statements by counsel in open court at the June 24, 2008 hearing:

> [counsel for Darlina]: My understanding is [Michael] is going to waive his rights to any further access to these children.
>
> [trial court]: Okay.
>
> [counsel for Michael]: Well, I don't know if that's—well, we are prepared today to enter an agreed, **not agreed,**

2. Rule 204.1 provides, in relevant part, the requirements for obtaining an order for the mental examination of a party:

   (c) Requirements for Obtaining Order. The court may issue an order for examination only for *good cause shown* and only in the following circumstances:
   (1) when *the mental or physical condition* (including the blood group) of a party, or of a person in the custody, conservatorship or under the legal control of a party, *is in controversy;* ...
   TEX.R. CIV. P. 204.1 (emphasis added).

3. Rule 204.4 provides, in relevant part, as follows:

   In cases arising under Family Code Titles II or V, the court may—on its own initiative or on motion of a party—appoint ... one or more psychologists or psychiatrists to make any and all appropriate mental examinations of the children who are the subject of the suit or of any other parties....

TEX.R. CIV. P. 204.4.

4. In *In re N.R.C.*, no party argued that the requirements of Texas Rule of Civil Procedure 204.1 do not apply to trial court orders that are governed by Texas Rule of Civil Procedure 204.4, and the court did not determine that the party requesting the examination had invoked Rule 204.4. *See* 94 S.W.3d 799, 814–15 (Tex.App.-Houston [14th Dist.] 2002, pet. denied). Furthermore, the *N.R.C.* court did not need to address the issue presented in this case because it concluded the trial court abused its discretion by denying the ex-wife's request for a psychological examination of her ex-husband and children under the standards of Rule 204.1. *See id.* Therefore, the *N.R.C.* court's holding did not resolve the issue raised by the parties in this proceeding.

5. In his third issue, Michael seeks mandamus relief to compel the trial court to sign an order granting his motion for nonsuit; however, because the trial court has signed such an order, this issue is moot.

but consent to their request to limit access to the kids **on a temporary basis.**

. . .

[counsel for Michael]: [Michael's] physical, mental condition is no longer in issue. We have submitted and filed . . . a Motion for Nonsuit this morning. . . . [Michael] has no claims for affirmative relief. He has no claims for Temporary Orders, no claims of any kind, other than a general denial. So he is not a Plaintiff or a Petitioner in any form in this case in this court. And . . . he is not seeking and he is prepared to stipulate to the—he stipulates to Page 8 of 9[sic] of [Darlina's] petition filed with this Court on April 25th, 2008. **That portion of the pleading that says, "Movant requests the Court to restrict Respondent's access to the children."** I'm telling the Court right now and I'm telling it on this record, that [Michael], is stipulating and agreeing to **that portion of [Darlina's] pleadings** and is not requiring any proof whatsoever for this Court to enter her Temporary Order **on that matter.** Number next,—[sic]

[counsel for Darlina]: I just want to know where you're reading from. I'm sorry.

[counsel for Michael]: Page 8 of 9 on your pleading.

. . .

[counsel for Michael]: We have stipulated on the record to the Plaintiff's petition, as it relates to her Temporary Order request.

. . .

[Michael] is tired of fighting. He's not going to fight with [Darlina]. And he has asked me through these last few motions I've made and comments I've made, to illustrate that to you and

this Court [sic] and the parties, that he's not fighting anymore.

. . .

But he knows of no other way, than to essentially come in here and fall on the proverbial sword and agree with [Darlina] in her pleading, Page 8 of 9, of her petition to take all of these matters out of issue.

. . .

[counsel for Darlina]: There is sufficient cause before the Court to order this man to submit to psychiatric evaluation. Furthermore, Judge, by agreeing to the entry of a Temporary Order, we still have a trial. We still have Final Orders to come up with.

[trial court]: That's right.

[counsel for Darlina]: And it's not out of issue. [sic] And the Court is also empowered to do what is in the best interest of these children, and we have not come to that conclusion yet.

. . .

[counsel for Michael]: Just to clear up that one point, I'm authorized by [Michael] to say that stipulation extends into and including the final judgment **on that point.**

[trial court]: Okay.

[counsel for Michael]: There would be **other issues, I know I can't dispose of.** Sorry.

[trial court]: Sure. And I don't know how much protection I'm going to need to offer these children. It may be that they never see their father again. It may be that they have to have supervised visitation if [sic] at some other time.

(emphasis added).

### Elements of Requested Modification

On page 8 of her motion to modify, Darlina asserted that it is in the best

interest of the Children for the trial court to modify the terms and conditions for Michael's access to or possession of the Children as follows:

(1) to restrict Michael's access to the Children,

(2) to order that Michael's periods of access to and possession of the Children be continuously supervised by the S.A.F.E. program or an entity or person chosen by the court,

(3) to order that Michael shall not have overnight periods of possession of the Children, and

(4) alternatively, that the court render a possession order designed to protect the Children.

At the June 24, 2008 hearing, Michael's counsel began by characterizing Michael's position as consenting to Darlina's request to limit access to the Children on a temporary basis, which would appear to be agreeing to item (1), above, in a temporary order. Michael's counsel then stated that, as to temporary orders, Michael was stipulating to "that portion of the pleading that says, 'Movant requests the Court to restrict Respondent's access to the children.'" Counsel then repeated that Michael was stipulating to "that portion of [Darlina's] pleadings and is not requiring any proof whatsoever for this Court to enter her Temporary Order on that matter."[6] Counsel later said that Michael is "tired of fighting" and that he is coming into court to "fall on the proverbial sword and agree with [Darlina] in her pleading, [p]age 8 of 9, of her petition to take all of these matters out of issue." The dissent concludes that this last statement shows that Michael stipulated to all relief sought by Darlina in her petition.[7] It is apparent from the record, however, that through this point in the hearing, Michael had made it clear that the stipulation was limited to the trial court's temporary orders. More importantly, however, vague statements about being "tired of fighting" and falling on one's sword are not clear enough to provide the terms of a stipulation or admission.[8] *See Salaymeh v. Plaza Centro, L.L.C.,* 264 S.W.3d 431, 438–40 (Tex. App.-Houston [14th Dist.] Aug. 26, 2008, no pet.) (holding that statements by counsel were not so clear and unequivocal as to constitute judicial admissions of occupancy); *Charette v. Fitzgerald,* 213 S.W.3d 505, 514 (Tex.App.-Houston [14th Dist.] 2006, no pet.) (holding that record did not reflect that parties' counsel stipulated to the reasonableness of the requested attorney's fees, as alleged by appellees). Counsel later extended the stipulation to include "final judgment on that point" but stated that "there would be other issues, I know I can't dispose of."[9] On this record, although Michael may have stipulated to temporary and final orders as to item (1) above, he did not stipulate or admit to the other three items.[10] *See Salaymeh,* 264

---

6. (emphasis added).

7. *See post* at p. 485–86, n. 4.

8. The dissent relies on counsel's use of the plural noun in stating that "matters" are "out of issue." However, counsel used the singular most of the time, and there are two children involved, so stipulating to one item of relief could be considered two matters. In any event, this passing use of the plural is not sufficient to broaden the stipulation to all relief sought by Darlina. Because stipula-

tions and other such concessions have serious consequences for parties' legal claims and positions, courts are loathe to characterize vague and ambiguous statements as stipulations. Instead, it is only clear and unequivocal statements that are fairly characterized as stipulations. *See Salaymeh,* 264 S.W.3d at 438-39; *Charette,* 213 S.W.3d at 514.

9. (emphasis added).

10. The dissent also cites a statement by Michael's counsel that Michael "is not seeking

S.W.3d at 438–40; *Charette*, 213 S.W.3d at 514. Therefore, Michael did not stipulate to all relief sought by Darlina.[11]

### Is Michael's mental condition in controversy?

■ Though Michael did agree that the trial court could put restrictions on his access to the Children, he did not agree to specific restrictions, leaving it up to the trial court to decide what restrictions are in the Children's best interest in light of the risks to the Children during Michael's periods of possession. Thus, though Michael has agreed that restrictions are necessary, the trial court still has to determine whether it is in the Children's best interest to order that all of Michael's periods of access and possession should be supervised, and if so, whether they should be supervised by the S.A.F.E. program or another entity or person. Likewise, the trial court still has to determine whether it is in the Children's best interest for Mi-

chael to have overnight periods of possession.[12]

The record before the trial court shows that Michael has a history of family violence and substance abuse. It is against this backdrop that the trial court seeks additional data to inform its decision as to the restrictive measures necessary to protect the Children. Because these decisions are often complex and difficult, the Texas legislature has equipped district courts with a number of tools to assist them in making this important determination. One such tool is the psychiatric evaluation of those in whose care children might be entrusted.

The affidavit before the trial court would support a finding that, after the trial court's last modification order on October 18, 2006, Michael engaged in conduct that endangered the well-being of his children with Rachel. In light of the evidence of erratic and violent behavior, Michael's mental condition is in controversy as the trial court seeks to determine what type of modification order would be in the best

---

visitation **right now**." (emphasis added). *See* post at p. 486, n. 5. However, at the time counsel made this statement, counsel clearly had limited the stipulation to temporary orders and had made it clear that Michael did not waive all access to the Children. Under the current order, Michael had access to the Children; he did not need to seek visitation because he already had it. No one asserts that Michael agreed in the trial court to waive *all* access or visitation with the Children, and the record does not reflect that he did so. This statement by counsel is not consistent with a stipulation by Michael that Darlina is entitled to all four items of relief requested in her petition.

11. In addition, even if Michael had stipulated to the above four items, the trial court still would have to decide what relief to award in the best interest of the Children. These four items are inconsistent and cannot all be granted at once. In the first three items, Darlina asked the trial court to restrict Michael's access to the Children, order that Mi-

chael's periods of access and possession be continuously supervised by the S.A.F.E. program or an entity or person chosen by the court, and order that Michael not have overnight periods of possession. However, in the fourth item, Darlina requested, in the alternative, that the trial court render a possession order designed to protect the Children. Therefore, even if Michael had stipulated to the relief requested in all four items, the trial court still would have to decide whether to grant a modification as requested in the first three items or as requested in the fourth. In the latter case, the trial court would have to consider what other modification order would protect the Children.

12. Even if Michael had stipulated to all four of the items of relief requested on page 8 of Darlina's motion, the trial court still would have to determine if it is in the best interest of the Children to award the relief sought in the first three items or to protect the Children by some other order, as requested in the fourth item.

interest of the Children.[13] *See In re N.R.C.*, 94 S.W.3d 799, 814–15 (Tex.App.-Houston [14th Dist.] 2002, pet. denied) (stating that father's mental condition was in issue); *Laub v. Millard*, 925 S.W.2d 363, 364–65 (Tex.App.-Houston [1st Dist.] 1996, no writ) (same). Presuming that Darlina had to show that Michael's mental condition is in controversy and that there is good cause for a compulsory mental examination, the trial court did not abuse its discretion by impliedly determining that both elements have been shown in this case.[14] *See In re N.R.C.*, 94 S.W.3d at 814–15 (holding that trial court abused its discretion by denying mother's request for a psychological evaluation of children's father); *Laub*, 925 S.W.2d at 364–65 (holding that trial court abused its discretion by denying husband's request for a psychological evaluation of wife). Thus, Michel's argument that his mental condition is not in controversy lacks merit.

**Did Michael request the trial court to set aside its July Order and to specify the time, manner, conditions, purpose, and scope of the psychiatric evaluation?**

█ In his second issue, Michael asserts that the trial court's June Order improper-ly fails to specify the time, manner, conditions, purpose, and scope of the examination. In its subsequent July Order, the trial court specified the time and manner of the evaluation. Presuming, without deciding, that the July Order does not state the conditions, purpose, and scope of the examination, to be entitled to mandamus relief, Michael would have to satisfy the requirement of a predicate request and adverse ruling in the trial court.

█ Equity is generally not served by issuing an extraordinary writ against a trial court judge on a ground that was never presented in the trial court and that the trial judge thus had no opportunity to address. *In re Texas Best Staff Leasing, Inc.*, Nos. 01–08–00296–CV & 01–08–00418–CV, 2008 WL 4531028, at *5 (Tex. App.-Houston [1st Dist.] Oct. 9, 2008, orig. proceeding [mand. filed]) (mem.op.). Mandamus relief generally requires a predicate request for an action and a refusal of that request. *Axelson, Inc. v. McIlhany*, 798 S.W.2d 550, 556 (Tex.1990). However, the requirement that there be a predicate request and adverse ruling is

---

**13.** The dissent states that, at the May 21, 2008 hearing, "the trial court expressly stated that, without hearing any evidence, it would … order [Michael] to submit to a psychiatric evaluation." *Ante* at p. 485; *see ante* at p. 485, n. 2; p. 486, n. 5. This is incorrect. First, the trial court did not say that without hearing any evidence it was ordering Michael to submit to a psychiatric evaluation. Toward the end of the hearing, the trial court did say that it was appointing an amicus attorney "without hearing any evidence." Ten sentences later in the reporter's record and after an interruption by Michael's counsel, the trial court ordered Michael to have a psychiatric evaluation, without mentioning the evidence upon which this order was based. Prior to these statements, the trial court granted Michael's counsel's request to be heard, and the court entertained Michael's arguments. During this colloquy, the trial court specifically mentioned that it had before it evidence in the form of Rachel's affidavit. It is clear from the record that the trial court ordered a psychiatric evaluation only after considering evidence.

**14.** Michael relies on *Walsh v. Ferguson;* however, in *Walsh*, the order was supported by no evidence whatsoever. *See* 712 S.W.2d 885, 887 (Tex.App.-Austin 1986, no writ). In this case, Darlina's counsel relied on Rachel's affidavit at the May 21, 2008 hearing, during which the trial court sua sponte ordered a mental examination. *See* Tex.R. Civ. P. 204.4 (allowing sua sponte mental examination orders in Family Code cases such as this one). Darlina then followed up with a motion seeking a written order compelling this mental examination. Because the trial court had Rachel's affidavit before it, *Walsh* is not on point.

excused when such a request would have been futile and the trial court's refusal little more than a formality. *See In re Texas Best Staff Leasing, Inc.*, 2008 WL 4531028, at *5. To determine whether a request would have been futile, appellate courts examine whether the request would have added anything for the trial court's consideration. *See id.*

Michael asks this court to grant a writ of mandamus compelling the trial court to vacate its June Order because, in it, the trial court allegedly failed to specify the time, manner, conditions, purpose, and scope of the examination. Notably, however, the mandamus record shows that Michael did not complain of this alleged failure in the trial court as to any of the trial court's orders. Moreover, Michael did not ask the trial court to set aside any order based on this alleged failure.[15] Presuming, without deciding, that the July Order does not state the conditions, purpose, and scope of the examination, (1) the record does not show that the trial court would refuse to specify the conditions, purpose, and scope of the psychiatric examina-

tion in its order if asked to do so; and (2) if Michael had asked the trial court to specify these matters, the trial court clearly could have done so, thus obviating the need to grant mandamus relief. Voicing the complaint that the trial court did not specify in its order the items required by Texas Rule of Civil Procedure 204.1(d) would have added something for the trial court's consideration. Therefore, it would not have been futile for Michael to have requested the trial court to specify these matters in the trial court's written order compelling his psychiatric examination.[16] *See In re Texas Best Staff Leasing, Inc.*, 2008 WL 4531028, at *5-6. Michael did not present his complaint or otherwise give the trial court an opportunity to correct the alleged deficiencies in its written order, and Michael has not asserted otherwise in this court.

For these reasons, Michael failed to satisfy the requirement of a predicate request and refusal by the trial court, and he is not entitled to the relief requested in his second issue.[17] *See Axelson, Inc.*, 798 S.W.2d

---

**15.** The dissent asserts that Michael's objection under Rule 204.1(c) that there was no good cause for a psychiatric evaluation put the trial court on notice that Michael was also objecting that the trial court's order did not specify the time, manner, conditions, purpose, and scope of the evaluation, as required by Rule 204.1(d). *See ante* at p. 486, n. 5. This assertion lacks merit because these are two distinct objections. Michael voiced one in the trial court but not the other. Even if there is no good cause for an evaluation, a trial court's order can still specify the time, manner, conditions, purpose, and scope of the evaluation. A trial court's order can fail to specify these matters even though there is good cause for an evaluation. Michael simply failed to present to the trial court any complaint under Rule 204.1(d).

**16.** The dissent concludes that it would have been futile for Michael to object under Rule 204.1(d) because, by overruling Michael's objection under Rule 204.1(c) and admonishing

Michael to obey the court's orders, the trial court made it "abundantly clear that it expected Michael to comply with its verbal order, notwithstanding the fact that the order did not comply with the required procedural safeguards." *See ante* at p. 486, n. 5. Though the trial court did admonish Michael to obey the court's orders, it did not state or indicate that any psychiatric examination order was not in compliance with procedural safeguards. There is nothing in the record indicating that the trial court was determined to ignore Rule 204.1(d) or that it would have been useless for Michael to voice an objection under Rule 204.1(d). A request by Michael for the trial court to specify the matters listed in Rule 204.1(d) would have presented an additional matter for the trial court to consider. *See In re Texas Best Staff Leasing, Inc.*, 2008 WL 4531028, at *5-6.

**17.** Therefore, the dissent's concerns that the trial court's order should specify the manner, conditions, and scope of the psychiatric exam-

at 556 (holding that mandamus relief was not available because trial court had not refused to grant the relief requested by relators); *In re Texas Best Staff Leasing, Inc.,* 2008 WL 4531028, at *5–6 (holding that mandamus relief was not available as to relief relators had not requested from the trial court); *In re Kenefick,* No. 14–08–00203–CV, 2008 WL 3833842, at *6 (Tex.App.-Houston [14th Dist.] Aug. 19, 2008, orig. proceeding) (mem.op.) (holding that relator was not entitled to mandamus relief regarding alleged lack of specificity in trial court's order because relator did not show that he presented this complaint to the trial court and that the trial court refused to correct the alleged defects in the order). Accordingly, the second issue is overruled.

## CONCLUSION

Michael did not stipulate to all relief sought by Darlina. Even if Michael had stipulated to all such relief, the trial court still would have to decide whether to grant the modification sought in the first three items of requested relief or the modification sought in the fourth item. In the latter case, the trial court would have to consider what other modification order would protect the Children. The affidavit before the trial court supports a finding that, after the trial court's last modification order, Michael engaged in conduct that endangered the well-being of his children with Rachel. In light of the evidence of Michael's erratic and violent behavior, good cause has been shown and Michael's mental condition is in controversy as the trial court undertakes to determine what type of modification order would be in the best interest of the Children. Thus, as to the mandamus relief sought under his first issue, Michael has not shown that the trial court clearly abused its discretion. As to

ination do not support the granting of mandamus relief in this case. *See post* at pp. 485–

the relief sought under his second issue, Michael is not entitled to mandamus relief because he did not present his complaints in the second issue to the trial court to give the trial judge an opportunity to correct the alleged deficiencies in the trial court's written order. Accordingly, Michael's mandamus petition is denied.

The stay imposed by this court is lifted.

SEYMORE, J., concurring without opinion.

GUZMAN, J., dissenting.

EVA M. GUZMAN, Justice, dissenting.

Because the plurality determines that the trial court's failure to comply with the rules of civil procedure governing a trial court's order for a psychiatric evaluation does not constitute an abuse of discretion, I respectfully dissent.

I agree that, notwithstanding Michael's non-suit of his claims for affirmative relief, his mental condition may remain at issue because the trial court ultimately must craft a possession-and-access order that is in the children's best interests. But although a party's mental condition often is at issue when a trial court must decide conservatorship matters, a psychiatric evaluation is not always necessary or justified.

Texas Rule of Civil Procedure 204.1 prescribes certain requirements and procedural safeguards which must be met for a trial court to compel a litigant to submit to the extremely invasive measure of an involuntary psychiatric evaluation. Here, the mandamus record before us is not only devoid of evidence that the trial court complied with Rule 204.1's requirements, but establishes instead that the trial court disregarded them. Inasmuch as the trial

87.

court has no discretion to incorrectly determine or apply the law, I would conclude that the order as written presents a clear abuse of discretion for which there is no adequate remedy on appeal.[1] I therefore would grant mandamus relief.

Under our rules of civil procedure, a psychiatric evaluation may not be compelled absent good cause. Tex.R. Civ. P. 204.1(c). "Good cause" is established if (a) the examination will produce or lead to relevant evidence, (b) there is a reasonable nexus between the conditions in controversy and the examination sought, and (c) it is not possible to obtain the information desired through less invasive means. *Coates*

*v. Whittington*, 758 S.W.2d 749, 752 (Tex. 1988). Here, the trial court failed to adequately consider these factors before compelling Michael to undergo a psychiatric evaluation. To the contrary, the trial court expressly stated that, without hearing any evidence,[2] it would appoint an amicus attorney, require Michael to undergo instanter drug testing, and order him to submit to a psychiatric evaluation.[3] Michael then non-suited all of his requests for affirmative relief and stipulated to Darlina's request for restricted access, and although the trial court was still required to determine whether such restrictions were in the children's best interest,[4] the court's

1. *See In re Dep't of Family & Protective Servs.*, 273 S.W.3d 637, 642 (Tex., 2009)("If the trial court fails to properly interpret the law or applies the law incorrectly, it abuses its discretion."); *In re Cerberus Capital Mgmt., L.P.*, 164 S.W.3d 379, 382 (Tex.2005) (per curiam).

2. The trial court explicitly stated at the first hearing on Darlina's requested modification, "Okay. Well, *without hearing any evidence*, I'm going to appoint an Amicus to represent these children. And I'm going to order an instanter drug test of Dr. Brown.... I'm ordering Dr. Brown for a psychiatric eval with Dr. Buschong." Further, the order requires the psychiatrist to provide "a detailed written report of his psychiatric evaluation of [Michael] setting out his findings, including the results of all tests made, diagnoses, and conclusions" and to provide copies of the report to the court and the attorneys.

3. The plurality incorrectly characterizes both the record and the basis for my dissent. Regarding the former, the record speaks for itself: the trial court stated that it was acting "without hearing any evidence"; it in fact did not hear any evidence; and the documentary evidence, i.e., the affidavit of Michael's current wife, does not address all of the factors necessary to establish good cause. In particular, no evidence was ever offered to suggest that the evaluation ordered, without limitation as to its manner or scope, was the least intrusive means of obtaining the desired information. The plurality's statement that the trial court did not prevent any party from presenting evidence and did not refuse to

hear evidence misses the mark. In the absence of an affirmative showing of good cause—which requires evidence that it is not possible to obtain the information through less intrusive means—Michael bore no evidentiary burden at all. Because there is no evidence that less intrusive means would not suffice, the record does not affirmatively show good cause. *See Coates*, 758 S.W.2d at 751; *see also Laidlaw Waste Sys. (Dallas), Inc. v. City of Wilmer*, 904 S.W.2d 656, 660–61 (Tex. 1995) (stating that pleadings generally are not evidence); *McCain v. NME Hosps., Inc.*, 856 S.W.2d 751, 757 (Tex.App.-Dallas 1993, no writ) ("Motions and arguments of counsel are not evidence."). In the absence of such evidence, the trial court had no discretion to compel Michael to submit to a psychiatric evaluation. *See Coates*, 758 S.W.2d at 751; Tex.R. Civ. P. 204.1(c). Thus, the plurality's observation that the trial court did not refuse to hear evidence suggests only that Darlina could have offered evidence justifying the trial court's order despite the fact that the court already had ruled. Even assuming that such post-ruling evidence would have cured the trial court's error, none was offered here.

4. Although the plurality holds that Michael did not stipulate to all of the relief Darlina sought, the plurality reads the record too narrowly. Michael's counsel stated to the trial court that "he knows of no other way, than to essentially come in here and fall on the proverbial sword and agree with [Darlina] in her pleading, Page 8 of 9, of her petition...." The

need for information must be met through the least intrusive means.

Due consideration of less intrusive means also may affect the scope of the evaluation. "Psychiatric evaluations vary according to their purpose." Michael J. Vergare et al., *Practice Guideline for the Psychiatric Evaluation of Adults*, PRACTICE GUIDELINES FOR THE TREATMENT OF PSYCHIATRIC DISORDERS, at 1, 6 (Am. Psychiatric Ass'n, Compendium 2006). Here, however, no purpose, scope, or conditions were specified in the order at issue. *Cf.* TEX.R. CIV. P. 204.1(d) (requiring an order for a mental examination to "specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made"); *Coates*, 758 S.W.2d at 752. Because it contains no limitations on the scope, the examiner may probe any aspect of Michael's thoughts, behavior, abilities, beliefs, health, or history that could fall under the rubric of a psychiatric evaluation. *See generally* Dana Baerger et al, *Methodology for Reviewing the Reliability and Relevance of Child Custody Evaluations*, 18 J. AM. ACAD. MATRIM. LAW. 35, 50–52 (2002) (recognizing the pitfalls inherent in a general order for a psychiatric evaluation, such as the likelihood that "evaluators will address irrelevant issues that confuse the litigation and increase the cost of the evaluation").[5] The result is that the examiner is permitted to conduct a maximally-intrusive evaluation despite the absence of any record evidence that less-intrusive means are unavailable.

I agree that psychiatric or psychological evaluations have a place in conservatorship

---

plurality also ignores counsel's next statement that begins, "And, finally, with *those matters out of issue, . . .*" (emphasis added).

5. In a detailed discussion, the plurality holds that Michael is not entitled to mandamus relief because he failed to satisfy the requirement of a "predicate request and refusal by the trial court" regarding his complaint that the trial court's order fails to specify the conditions and scope of the evaluation. *Ante* at 482–83. First, the record reflects that the trial court was aware that Michael was complaining about the scope of the psychiatric evaluation. For example, Michael's attorney argued to the trial court both that there was no "reasonable nexus" between Michael's condition and the examination sought and that it was "possible to obtain the desired information through less invasive means than a compelled psychiatric examination." Although these arguments relate to a good-cause determination under subsection (c) of Rule 204.1, they also reflect a complaint about the scope of the evaluation itself. A party should not lose his right to relief due to an unduly technical application of procedural rules. *Willis v. Donnelly*, 199 S.W.3d 262, 270 (Tex.2006). Further, as noted by the plurality, the requirement of a predicate request and adverse ruling is excused when such a request would have been futile. Here,

the trial court made it abundantly clear that it expected Michael to comply with its verbal order, notwithstanding the fact that the order did not comply with the required procedural safeguards:

[Darlina's Counsel]: [T]here is an order we're requesting. We just need a start date.... But I was looking to be able to give the Court an idea when he might be able to begin the evaluation of Dr. Brown.

The Court: And what's y'all's problem with that?

[Michael's Counsel]: Dr. Brown is not seeking visitation right now. That's not in issue. And Dr. Brown is objecting to being ordered to go to a psychologist—

The Court: Thank you. Denied.

. . .

The Court: I ordered this [psychiatric evaluation] over a month ago and he was *supposed to have it done immediately* and he has not. I would suggest you might want to tell [Michael] he shouldn't mess around with this Court. *When I give an order and I want something done, he needs to do it right away.*

(emphasis added). The order "over a month ago" referred to by the trial court is nothing more than the verbal statement that "without hearing any evidence, . . . I'm ordering Dr. Brown for a psychiatric eval with Dr. Buschong." *See supra*, n. 2. Thus, any further request by Michael to limit the scope of the evaluation was likely futile.

determinations. Indeed, a psychiatric evaluation might be a very useful tool in this case. But, it is only one of the tools available to a trial court in crafting a conservatorship order and should not be ordered without consideration of the factors and evidence justifying its use. Given the inherently invasive nature of a psychiatric evaluation, it is not within the trial court's discretion to disregard the safeguards set forth in the Rules of Civil Procedure and in binding precedent governing its application. The requirements of Rule 204.1(c) are not satisfied by conclusory allegations in pleadings and a nineteen-month old affidavit, neither of which addressed the possibility of obtaining the relevant information through less invasive means, and the order fails to specify the conditions and scope of the evaluation as required by Rule 204.1(d). Under these circumstances, I would hold that the trial court abused its discretion in issuing this order, and given the impossibility of an adequate remedy by appeal, mandamus relief is appropriate. I therefore respectfully dissent.